IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

R.R.C.,                            *

    Petitioner,                    *

vs.                                *
                               CASE NO. 4:25-CV-525 (CDL)

Warden JASON STREEVAL, et al.      *

    Respondents.                   *

_____

O R D E R

The Stewart Detention Center saga continues.  This time, detainees claim that Respondents have blatantly ignored this Court's prior orders directing that detainees be provided with a meaningful bond hearing pursuant to 8 U.S.C. § 1226 and the applicable regulations.  Each Petitioner filed a Motion to Enforce Judgment and to Show Cause Re Contempt (ECF No. 11).[1]  The Court held a hearing on the motions. During the hearing, the Court expressed skepticism about its subject matter jurisdiction and noted the dearth of evidence supporting Petitioners' conspiracy theory that the entire alien bond hearing process has become a sham.  At the close of the hearing, Petitioners requested an

_____

[1] Motions almost identical to the one filed in this case have been filed in several other cases pending in this Court. The Court has consolidated those cases with this one.  Order Consolidating Cases (Feb. 24, 2026), ECF No. 17 in 4:25-cv-525 (CDL).  Those cases are:  4:25-cv-527 (CDL), 4:26-cv-73 (CDL), 4:26-cv-76 (CDL), 4:26-cv-98 (CDL), 4:26-cv-163 (CDL), 4:26-cv-176 (CDL), 4:26-cv-226 (CDL), 4:26-cv-249 (CDL), 4:26-cv-266 (CDL), 4:26-cv-271 (CDL).  For the reasons stated in the consolidation order, the Court also consolidates 4:26-cv-206 (CDL) into this proceeding.

1

opportunity to file supplemental briefing and a motion to conduct discovery in an attempt to bolster the conspiracy claim. The Court granted that request.   The supplemental briefing, including Respondents' response, has been filed.

Petitioners double down on the arguments they made in their original motions that the Court should release Petitioners from detention based on Respondents' failure to follow the Court's previous orders.   In the alternative, Petitioners seek discovery to support their claims.   While Petitioners frame the motion as one asking the Court to enforce its previous order, the motion (as the Court observed at the hearing) in essence seeks to have the Court second-guess the discretion of the immigration judge in her denial of Petitioners' requests for bond.

Recognizing its limited jurisdiction, the Court has never ordered Respondents to *grant* any Petitioner a bond.   The Court ordered Respondents to conduct a bond hearing consistent with 8 U.S.C. § 1226 and the applicable regulations.   Order (Jan. 22, 2026), ECF No. 9 (citing *J.A.M. v. Streeval*, No. 4:25-CV-342-CDL, 2025 WL 3050094 (M.D. Ga. Nov. 1, 2025) and *P.R.S. v. Streeval*, No. 4:25-CV-330-CDL, 2025 WL 3269947 (M.D. Ga. Nov. 24, 2025)). The present record establishes that bond hearings have been held by an immigration judge who denied the bond requests.   Petitioners complain that the immigration judge did not conduct a sufficiently thorough and neutral review of each Petitioner's bond request.

Pretermitting whether the immigration judge was appropriately diligent and fair, it is clear that the decision to grant a bond in a particular case is a discretionary one. Congress never intended for the district courts to act as intermediate appellate courts with jurisdiction to review those individualized bond decisions.

To the contrary, Congress expressly stripped the courts of such jurisdiction. *See* 8 U.S.C. § 1226(e) ("The Attorney General's[/Secretary of Homeland Security's] discretionary judgment regarding the application of [§ 1226] shall not be subject to review. *No court may set aside any action or decision by the Attorney General[/Secretary of Homeland Security] under [§ 1226] regarding the detention of any alien or the revocation or denial of bond or parole*.") (emphasis added). As explained by the Supreme Court, "§ 1226(e) precludes an alien from 'challenging a "discretionary judgment" by the Attorney General[/Secretary of Homeland Security] or a "decision" that the Attorney General[/Secretary of Homeland Security] has made regarding his detention or release.'" *Jennings v. Rodriguez,* 583 U.S. 281, 295 (2018) (quoting *Denmore v. Kim,* 538 U.S. 510, 516 (2003)). Therefore, to the extent that Petitioners challenge the individualized decision-making of the immigration judge under the facts of their specific cases, this Court does not have jurisdiction to review those decisions.

This jurisdiction-stripping provision, however, does not prevent an alien from challenging the Government's detention authority under the "statutory framework as a whole." *Id.* at 295-296.[2]  Similarly, the Court finds that it would have jurisdiction to review a claim that Respondents have engaged in a systemic scheme to deny meaningful bond review in violation of an alien's due process and statutory rights. Petitioners' counsel has crafted such a claim based on a conspiracy theory that the entire bond process has been rendered a sham by the Executive Branch.  Thus, according to counsel, Petitioners were denied their due process right to a bond decision by a neutral arbiter.  Petitioners' counsel, along with many of her colleagues in the immigration bar, accuse the Executive Branch of corrupting the Justice Department's Executive Office of Immigration Review making it a mere rubber stamp for the President's deportation policies.  Given that the independent neutrality of the EOIR process is essential for satisfying the due process requirements of the Constitution, counsel's accusations, if true, have serious consequences.  But as the Court alluded to at the hearing, the Court is skeptical that the present record supports these allegations.

The evidence presented by Petitioner thus far consists primarily of unsubstantiated hearsay and speculation flavored with

---

[2] That is partly why the Court had jurisdiction to decide that § 1226 and not § 1225 (mandatory detention) applies in these and other similar cases.

a degree of hyperbolic advocacy. *See, e.g.*, Burman Aff. ¶ 19, ECF No. 11-5 ("From *conversations within the immigration bench and professional organizations*, it is clear . . ."); *id.* ¶ 20 ("I have noticed increasing *concern among members of the bench* . . ."); Baxter Decl. ¶ 10, ECF No. 11-7 ("There is *reason to believe* judges have been instructed to deny bonds."); Evans Decl. ¶ 13, ECF No. 11-8 ("*As reported throughout the country*, due process is dead in immigration court."); *id.* ("It is *abundantly clear* that immigration judges prioritize their job security over serving as neutral magistrates at the expense of some of the world's most vulnerable people."); Modi Decl. ¶ 11, ECF No. 11-10 ("Unfortunately, this . . . is a *common occurrence in immigration courts around the country* where immigration judges are no longer neutral arbitrators as they fear retaliation and firing by the executive branch.").

While sensational, such evidence is notoriously unreliable, particularly when it is unsupported by any hard data substantiating the conclusory allegations.  Counsel is not required to produce a "smoking gun," but the absence of any direct evidence is telling. Counsel's conspiracy theory rests upon the slender reed that certain circumstances in combination cannot possibly be the result of coincidence.  They must be the fruit of a devious and illegal (or at least extra-constitutional) purposeful plan.  Those circumstances were described by one affiant as follows: "[T]he

abrupt, uniform denial of bond—combined with judge reassignments and the abandonment of prior practices—strongly suggests coordinated action by EOIR and the Department of Justice to undermine federal habeas relief." Zambrano Decl. ¶ 33, ECF No. 11-12. Counsel's circumstantial evidence in the present record can be summarized as follows: a perception that bonds are being denied more frequently during the last several weeks, some immigration judges are not thoroughly studying the record before they deny bond, some immigration judges are not considering the appropriate factors in deciding whether a detainee is a flight risk, and several immigration judges have been fired. The Court finds this evidence insufficient to support the inference that a systemic failure of due process has occurred within the alien removal process.

Petitioners now seek to conduct discovery to bolster this record. The Court finds that they should be allowed to do so—in a targeted and limited manner. The evidence that may theoretically exist to support Petitioners' claim of a systemic denial of due process is controlled entirely by Respondents and agents of the Government responsible for the administration of the immigration review process by the Executive Branch. Furthermore, the Court finds that Petitioners' request for some discovery is not so devoid of good faith that it amounts to an attempt to engage in an unrestrained fishing expedition. A reasonable basis exists for

permitting limited and targeted discovery. For example, Petitioners pointed to some evidence of a dramatic reduction in the number of bond approvals recently without an obvious change in circumstances that would reasonably explain the change. Furthermore, the Executive Branch's aggressive enforcement of the immigration laws with a "stretch it to the limit approach" creates the potential for a disregard of traditional constitutional guardrails. Counsel should be allowed to discover reliable evidence that may substantiate the claim that this approach includes a corruption of the immigration review process.

The Court finds Respondents' objection to any discovery unpersuasive. It is telling that Respondents, throughout their briefing, rely heavily on the affidavit of Daren Margolin, the Director of the Executive Office of Immigration Review, submitted in opposition to Petitioners' motion; yet they suggest that Petitioner has no right to discover evidence to contest that affidavit. This "trust us" without a right to verify attitude demonstrates a misunderstanding of statutory and constitutional law.

The Court reminds counsel for Respondents, as it has on previous occasions, the Executive Branch's authority in this area is broad but not unlimited. *See J.A.M. v. Streeval,* No. 4:25-CV-342-CDL, 2025 WL 3050094, at *1 (M.D. Ga. Nov. 1, 2025); *see also Y.A.P.A. v. Trump,* 785 F.Supp.3d 1350, 1359 (M.D. Ga. 2025).

Constitutional guardrails exist to prevent any branch of government from steamrolling individuals based simply upon unbridled power and the perceived unpopularity of the steamrolled victim. As the Court has acknowledged in today's Order, the Judicial Branch's jurisdiction is limited as to its authority to interfere with individualized bond decisions. But the Executive Branch may not design a system that reshapes the immigration review process in a manner that tilts the delicate due process balance against aliens. Systemically denying a meaningful opportunity for release on a bond, when Congress has determined that detention is not mandatory, makes detention *de facto* mandatory. Such a systemic denial, if proven, not only disrespects Congress and the Constitution, but it also violates this Court's previous order requiring Respondents to provide each Petitioner with a meaningful bond hearing. Accordingly, the Court grants Petitioners' motion for discovery (ECF Nos. 20-9, 21) to the following extent.[3]

Petitioners are permitted to propound the following narrow and targeted discovery:

---

[3] Petitioners argue in their briefing that the regulations improperly place the burden of proof for a bond on the alien. Yet they seek to have the Court enforce the judgment that ordered a hearing consistent with those very regulations, and they ask the Court to hold Respondents in contempt for failing to follow the Court's order. If the regulations place the burden on the alien and if those regulations regarding the burden of proof were followed consistent with the Court's directive, there can be no contempt for placing the burden on the alien. While Petitioners may ultimately be able to challenge the regulation, the Court finds that the motion to enforce judgment/motion for contempt here is not the proper procedure for doing so.

8

1. Interrogatory:  For the period January 1, 2025 to March 1, 2026, state the following:  (a) the number of petitions under 28 U.S.C. § 2241 filed by alleged aliens in the Middle District of Georgia broken down by Division; (b) the number of bond/detention hearings held in the above identified cases, indicating the dates of the hearings and a brief summary of the disposition (*i.e.* bond granted/amount of bond or bond denied and the stated reason for denial); and (c) the number of cases in the above identified group of cases in which the detainee was released from detention on bond or some other form of pre-removal release, including the date of the bond/release decision.

2. Request for Production of Documents:  For the period January 1, 2025 to March 1, 2026, produce the following: any documents, electronic communications, and/or digital data in which any employee, agent or official of Respondents, including the Executive Office of Immigration Review and the Department of Homeland Security, describes policy and/or guidance regarding bond decisions for aliens who are arrested pending removal that was different from the policy and/or guidance that existed during the calendar year 2024.  This discovery request seeks any information that shows any change in Executive Branch policy and/or

guidance regarding bond decisions, which change occurred
after the current administration took office.  To the
extent that Respondents claim that a legal privilege exists
protecting against the disclosure of any of the requested
evidence, Respondents shall submit the evidence to the
Court for its *in camera* review with a contemporaneously
filed privilege log filed on the public docket.

3. Depositions:  Respondents shall make the following persons
available for Petitioners' counsel to depose: (a) Mr. Daren
K. Margolin, who filed the affidavit on behalf of the
Executive Office of Immigration Review in opposition to
Petitioner's motion, or some other designated witness who
has personal knowledge of the information contained in that
affidavit and has the authority to aver to the truth or
falsity of the statements in the affidavit. (b) A Federal
Rule of Civil Procedure 30(b)(6) designated witness to
testify on the subjects the court has found discoverable
in 1 and 2 above.

The parties shall confer within seven days of today's order in an
attempt to reach a schedule for completing the above authorized
discovery.  The proposed scheduling order shall include the dates
that the discovery requests will be propounded by Petitioners, the
due date for the responses to the discovery requests, the date by
which any 30(b)(6) deponent shall be designated, the dates by which

10

any depositions shall be taken, and the schedule for filing any supplemental briefing after all discovery has been completed.  That jointly proposed scheduling order shall be submitted to the Court by March 24, 2026.  If the parties cannot agree on the schedule, each party shall submit their separate proposed scheduling order by March 24, 2026.

*****

Congress has trusted the Executive Branch to review the legality of Executive Branch immigration removal decisions, substantially restricting judicial review.  Some may consider such delegation to amount to "the fox guarding the henhouse." But it is allowed—assuming that the review process has certain minimal due process protections.  It is for the Judicial Branch to decide whether (and to what extent) the Constitutional leash must be fitted upon the fox.  The Court intends to answer that question in this case.  The approved limited discovery should help it do so.

IT IS SO ORDERED, this 16th day of March, 2026.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA